[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14701
_____

D.C. Docket No. 4:08-cr-00100-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO FELIPE RASCO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 19, 2013)

Before HULL and HILL, Circuit Judges, and MOTZ,[*] District Judge.

PER CURIAM:

_____

[*]Honorable J. Frederick Motz, United States District Judge for the District of Maryland,
sitting by designation.

Alfredo Rasco appeals his two convictions and 133-month total sentence for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. After careful review of the entire record, and with the benefit of oral argument, we affirm Rasco's convictions and total sentence.

## I.  BACKGROUND

### A.    The Medicare Fraud Scheme

Defendant Alfredo Rasco ("Rasco") and Iris Oswald co-owned and operated United Therapy, a health care clinic, in Savannah, Georgia. Rasco and Oswald actively recruited Medicare beneficiaries who suffered from HIV/AIDS to be patients at the clinic. Rasco and Oswald submitted claims to Medicare for infusion-therapy services that United Therapy purportedly provided to its patients. However, the submitted claims were for services that were not actually provided, not medically necessary, and not entitled to reimbursement from Medicare.

From 2005 to 2008, Rasco and Oswald submitted $5.6 million in false and fraudulent claims to Medicare for United Therapy's purported infusion-therapy services. Medicare paid United Therapy over $3.5 million of those claims. United Therapy also submitted $146,268.94 in fraudulent claims to the U.S. Railroad Board, which paid a majority of the submitted claims.

To carry out the fraudulent scheme, United Therapy hired a Florida company to submit claims to Medicare on United Therapy's behalf. Riccy Mederos, who had assisted in aiding the establishment of "hundreds" of fraudulent health care clinics, owned the Florida billing company.

Rasco and Mederos hired Merry Perry, a nurse practitioner. Each week, Perry treated United Therapy's patients with 50 ccs of infusion medication.

However, at Rasco's and Mederos's direction, Perry prepared superbills that falsely stated that she treated the patients with 50 "units" of medication. Under Medicare billing terminology, one unit was the equivalent of ten ccs of medication. Although United Therapy provided only 50 ccs of medication to each patient, United Therapy billed Medicare as though United Therapy's patients had received 500 ccs of medication. During the scheme, United Therapy purchased only 3,135 grams of infusion medication, but it submitted claims to Medicare stating that United Therapy had administered 27,842 grams of medication.

United Therapy employed four doctors part-time, but none of the doctors actually provided infusion services, prescribed infusion medication, or authorized United Therapy to use their provider numbers.

In 2007, a company that processed claims on Medicare's behalf informed Rasco that United Therapy's billing practices were improper. The day after the claims-processing company contacted Rasco, he and his wife, Niurka Rasco

3

("Niurka"), opened an account under the name "United Medical" and began funding the account with the proceeds of United Therapy's fraud.

An investigation into United Therapy's fraudulent billing activity began. After Rasco became aware of the investigation, Rasco and Niurka established "United Medical" as a Medicare provider so that they could continue their Medicare fraud scheme. To do this, they filed numerous documents, including a "Reassignment of Benefits" application. On the documents, they listed Niurka as the president and owner of United Medical, despite Rasco being the true owner. United Medical submitted $9,395.69 in fraudulent claims to Medicare, but none of those claims were paid by Medicare. It is unclear whether United Therapy continued to submit fraudulent claims to Medicare once United Medical began submitting fraudulent claims.

In submitting the false and fraudulent claims to Medicare, Rasco and Oswald used the name and provider number of a United Therapy doctor. With that number, they submitted over $10,000 of Medicare claims on behalf of United Medical. However, the United Therapy doctor had no knowledge of, and did not consent to, the use of his information in this way.

**B.    The October 9, 2008 Superseding Indictment**

4

On October 9, 2008, the government filed a superseding indictment charging three defendants—Rasco, his wife Niurka, and Mederos—in relation to the Medicare fraud scheme.  Rasco had retained counsel, Alex Zipperer, represent him.

Before the grand jury even returned the superseding indictment, Rasco engaged in preliminary plea negotiations with the government and made factual proffers.  As to at least one of Rasco's factual proffers, the government agreed that no information that Rasco disclosed would be used against him in a criminal case.

After the grand jury returned the superseding indictment, in December 2008, Rasco moved, through counsel, to dismiss it.  Rasco argued that the government had improperly used Rasco's statements from his oral factual proffers to obtain the superseding indictment.

Rasco claimed that he had made the first oral proffer because he "believed that if he truthfully informed the government of his own conduct and his wife's lack of any knowing participation in the unlawful transactions, the government would subsequently agree not to prosecute his wife and would become amenable to entering into a reasonable plea agreement with him."

Following this motion, on January 27, 2009, Julie M. Wade entered an appearance as retained counsel for Rasco.  Zipperer, Rasco's initial counsel, moved to withdraw on May 15, 2009.

5

On June 22, 2009, defendant Mederos pled guilty to one count each of: (1) conspiracy to commit health care fraud; and (2) health care fraud.

## C.    The October 7, 2009 Superseding Indictment

On October 7, 2009, before the district court ruled on Rasco's motion as to the October 2008 indictment, the government filed a third superseding indictment charging three defendants—Rasco, his wife Niurka, and Oswald—with offenses stemming from the Medicare fraud scheme. The indictment charged Rasco with: 1 count of conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1349 and 2 (Count 1); 54 counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Counts 2 through 55); and 3 counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Counts 56 through 59).

The third superseding indictment alleged that defendants Rasco, Niurka, and Oswald submitted $5.6 million of false and fraudulent claims to Medicare for medical services that were not medically necessary, not billed, and not entitled to reimbursement from Medicare.

The third superseding indictment also sought criminal forfeiture of all property traceable to the offenses. The forfeitable property included over $1 million in funds from various bank accounts.

## D.    The Pretrial Proceedings in 2009 to 2010

On October 29, 2009, Rasco was arraigned on the third superseding indictment. At the arraignment, a magistrate judge informed Rasco that the "conspiracy count [was] punishable by up to ten years of imprisonment." That was correct because the violations of §§ 1349 and 2 in Count 1 have a statutory maximum penalty of ten years. 18 U.S.C. §§ 1347(a), 1349.

Count 56, the aggravated-identity-theft charge, had a "term of imprisonment of two years," which was consecutive to any other term of imprisonment imposed. 18 U.S.C. § 1028A(a)(1), (b). That two-year prison term is both the mandatory minimum and the maximum penalty for Count 56.[1] Id. § 1028A(a)(1). Consistent with this statute, the magistrate judge told Rasco that the "[a]ggravated identity theft charge is two years that would have to run consecutive to any other sentence." The magistrate judge, however, did not specifically use the term "mandatory." Rasco pled not guilty to charges against him in the third superseding indictment.

In November 2009, the magistrate judge construed Rasco's earlier December 2008 motion to dismiss the superseding indictment as a motion to dismiss the third superseding indictment based again on the government's improper use of his factual proffers during grand jury proceedings. The magistrate judge did not rule on this construed motion at that time.

---

[1]Specifically, § 1028A(a)(1) and (b) state: that whoever commits the offense of aggravated identity theft in relation to, inter alia, conspiracy to commit health care fraud, "shall, in addition to the punishment . . . for [conspiracy to commit health care fraud], be sentenced to a term of imprisonment of 2 years" and "no term of imprisonment imposed [under § 1028A] shall run concurrently with any other term of imprisonment imposed . . . ." Id. (emphasis added).

7

On December 11, 2009, Rasco's counsel Wade filed two more motions to dismiss the third superseding indictment, this time based on alleged violations of the Sixth Amendment right to a speedy trial and the Due Process Clause of the Fifth Amendment. Ultimately, the magistrate judge recommended that the district court deny these two motions, which the district court did in May 2010.

In the meantime, on January 26 and 27, 2010, the magistrate judge held a hearing as to Rasco's earlier construed motion to dismiss the third superseding indictment based on the government's improper use of his proffer statements. On March 8, 2010, the magistrate judge recommended that the district court deny Rasco's construed motion to dismiss the third superseding indictment. Four months later, on July 16, 2010, the district court agreed and denied Rasco's motion.

**E.    The Trial and the Plea Agreement, August 30, 2010**

On July 29, 2010, the district court scheduled Rasco's, Niurka's, and Oswald's trial for August 30, 2010. On the morning of August 30, the trial began, and the jury was selected and empaneled. At 11:30 AM, Rasco indicated his desire to enter a plea of guilty. The terms of Rasco's plea were negotiated.

Pursuant to a written plea agreement dated August 30, 2010, Rasco pled guilty to only Counts 1 and 56 of the third superseding indictment. The plea agreement provided that (1) Count 1 had a penalty of "[i]mprisonment for not more

8

than 10 years" and (2) Count 56 had a penalty of "[i]mprisonment for 2 years to run consecutively." The text did not refer to this two years as a mandatory penalty.

In the plea agreement, the government agreed (1) to dismiss the remaining 57 counts against Rasco and (2) that the loss amount was more than $2.5 million, but less than $7 million.

The plea agreement contained a section entitled "Factual Basis," which stated that Rasco agreed that: (1) he operated and controlled United Therapy and United Medical; (2) he and Oswald submitted $5.6 million in false and fraudulent claims to Medicare; (3) they used a doctor's name and provider number to submit the false and fraudulent claims on behalf of United Therapy; and (4) Rasco "possess[ed] and use[d], without lawful authority, a means of identification of a medical doctor" in relation to committing health care fraud.

A section of the plea agreement entitled "Fines, Assessments and Restitution" stated that Rasco understood that, "if a fine or restitution" was imposed by the court, he would be required to disclose his assets and liabilities as of the date of the offense. By signing the agreement, Rasco indicated that he understood "that any order of restitution . . . will encompass full restitution to the victims of the scheme to defraud identified in the Indictment."

## F.    The Plea Hearing, August 30, 2010

After the plea agreement was signed, the district court held a hearing to determine whether to accept Rasco's plea. The district court advised Rasco that: (1) the maximum sentence of imprisonment for Count 1 was ten years; and (2) for Count 56, the "maximum sentence would be a penalty of imprisonment of two years to run consecutively."

Before the district court accepted his plea, Rasco confirmed that he had discussed his case and his possible guidelines calculations with his attorney. Rasco stated that he was satisfied with his attorney's representation. The court informed Rasco that, even if his sentence was more severe than he anticipated, he was bound by his guilty plea and could not withdraw it. Rasco stated that he understood. Rasco stated that he was pleading guilty freely and voluntarily, that his attorney had not tried to force or "push" him into pleading guilty, and that no one had "done anything that [Rasco] consider[ed] to be wrong or unfair which ha[d] forced [Rasco] to plead guilty."

The district court asked the government to provide a factual proffer. The government stated that, at trial, the evidence would have shown that: (1) Rasco conspired with Mederos and Oswald to defraud Medicare; and (2) Rasco and his co-conspirators submitted more than $5 million of false claims to Medicare. Rasco agreed with the government's factual proffer.

10

The district court accepted Rasco's plea and adjudged Rasco guilty of Counts 1 and 56.

Also on August 30, 2010, the government filed an information charging Niurka (Rasco's wife) with one misdemeanor count of violating Medicare assignment terms. The information alleged that Niurka identified herself as the sole owner of United Medical on Medicare documents when Rasco was actually the true owner of United Medical. Niurka pled guilty to that misdemeanor charge that same day.[2]

## G.    The Presentence Investigation Report Dated November 17, 2010

Rasco's Presentence Investigation Report ("PSI"), dated November 17, 2010, provided that, as to Count 1, Rasco had a base offense level of six, pursuant to U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2). The PSI calculated Rasco's total offense level as 28 based on: (1) an 18-level increase, pursuant to § 2B1.1(b)(1)(J), because the loss amount was more than $2.5 million, but not more than $7 million; (2) a 2-level increase, pursuant to § 2B1.1(b)(9)(A) and (C), because the offense involved relocating a fraudulent scheme to another jurisdiction to evade law enforcement and "otherwise involved sophisticated means"; (3) a 4-level increase, pursuant to U.S.S.G. § 3B1.1(a), for Rasco's role as an organizer or leader; and

---

[2]Also on August 30, 2010, the government filed an information charging Oswald with payment of kickbacks related to a federal health care program. Oswald pled guilty that same day.

11

(4) a 2-level reduction, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility.

The PSI reported Rasco's criminal history category was III. Rasco's prior convictions included: (1) a 1984 conviction for trafficking in cocaine; (2) a 1987 conviction for assault on a U.S. customs officer; and (3) a 1990 conviction for possession with intent to distribute more than five kilograms of cocaine.

The PSI notified Rasco that Count 1 had a maximum term of imprisonment of ten years. The PSI expressly notified Rasco that Count 56 had a "statutorily required term" of two years' imprisonment and that the statute required that this two-year term "shall be served consecutively to any other term of imprisonment imposed." Rasco's criminal history category of III and offense level of 28 yielded an advisory guidelines range of 97 to 120 months' imprisonment as to Count 1,[3] plus the required-additional 24 months' imprisonment as to Count 56.

The PSI provided that restitution should be ordered in the amount of $3,948,846.47, pursuant to 18 U.S.C. § 3663A.

## H.    The December 2010 Written Objections to the 2010 PSI

On December 10, 2010, Rasco's counsel Wade filed objections to the PSI's calculations. She objected to the two-level increase for sophisticated means

---

[3]Rasco's advisory guidelines range for Count 1 was originally 97 to 121 months, but became 97 to 120 months, pursuant to U.S.S.G. § 5G1.1(c), because the statutory maximum sentence for Count 1 was 10 years' imprisonment.

because Rasco did not relocate a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials, and his offense did not "otherwise involve[] sophisticated means."  Wade also objected to the increase for Rasco's role, arguing that he did not organize, lead, manage, or supervise others involved in the criminal activity.  At the same time, Rasco himself filed written objections to the PSI's facts and guideline calculations.  However, the exact nature of these objections is unclear, as these objections are not part of the record on appeal.

For the next seven months, from January 2011 to August 30, 2011, nothing else happened.  Then, on August 30, 2011, the government filed a motion requesting that Rasco's sentencing be scheduled.  The district court scheduled Rasco's sentencing hearing for September 28, 2011.

## I.    Rasco's Request to Proceed <u>Pro Se</u>, September 19, 2011

On September 19, 2011, Rasco's counsel Wade filed a motion to withdraw and requested that Rasco be permitted to proceed pro se at sentencing.  Wade stated that she and Rasco had divergent views about the "strategy and propriety of certain issues" Rasco wished to raise to the district court.  Wade believed that the attorney-client relationship was "irreconcilably damaged" due to the dispute.  She requested that the district court conduct a hearing, pursuant to Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), to ensure that Rasco's decision to proceed pro se at sentencing was made knowingly, voluntarily, and intelligently.

13

Wade attached to her motion to withdraw a one-page letter written by Rasco, addressed to Wade, and dated September 14, 2011.  According to Rasco's letter, "[o]n the day of trial [Wade] coerced [Rasco] into accepting another charge which was not on the original plea agreement."  Rasco's letter asserted that Wade had provided ineffective assistance of counsel, that he was indigent and could not hire another attorney, and that he felt that he had no choice but to proceed pro se in his case.  Thus, Rasco had directed Wade to file a motion on his behalf asking the district court to allow him to proceed pro se.[4]

### J.    The Faretta Hearing on September 27, 2011

At the Faretta hearing on September 27, 2011, Rasco was present with his retained attorney Wade.  The magistrate judge advised Rasco that Count 1 had an advisory guidelines range of 97 to 120 months' imprisonment, which was to be "followed by the mandatory 24-month sentence consecutive as to Count 56."  The magistrate judge explained to Rasco that the probation officer had recommended that restitution be imposed in the amount of $3,948,846.47.

Rasco stated that he wanted to discharge Wade and represent himself pro se because he had asked Wade to file a motion to withdraw his guilty plea, but she

_____

[4]On August 12, 2010, Rasco filed a financial affidavit under the Criminal Justice Act ("CJA financial affidavit") "in support of request for attorney, expert or other court services without payment of fee."  Back in 2010, Rasco did not file a motion for a court-appointed attorney, but proceeded to trial with his retained attorney Wade.  At the time of his guilty plea on August 30, 2010, Rasco expressly indicated that he was satisfied with his counsel Wade.

14

had refused to file the motion. Rasco stated that he wanted to withdraw his guilty plea because the government and Wade had coerced him into pleading guilty to Count 56's charge of aggravated identity theft. Despite the fact that his August 30, 2010 plea was entered more than one year earlier, Rasco, right before his September 28, 2011 sentencing, was now alleging to the court for the first time that he had been coerced into pleading guilty.

After hearing from Rasco and Wade, the magistrate judge found that: (1) Rasco had not established that Wade could not serve as an effective advocate at the sentencing hearing, scheduled for the next day; (2) Wade was fully capable of representing Rasco at sentencing; and (3) Rasco had not made a good cause showing for having Wade withdraw as Rasco's counsel and for new court-appointed counsel to replace her at sentencing. The magistrate judge also found that Rasco was competent and could represent himself pro se at sentencing.

Following the Faretta hearing, the magistrate judge entered a written order, providing that: (1) Rasco could proceed pro se in future proceedings; and (2) Wade would remain as standby counsel and appear at sentencing. The magistrate judge reiterated that Rasco had not shown that he was entitled to court-appointed counsel.

**K.    The Sentencing Hearing, September 28, 2011**

On September 28, 2011, the district court held Rasco's sentencing hearing. At the end of the Faretta hearing the day before, Rasco had filed a motion requesting that the district court continue this sentencing hearing to allow him time to file a pro se motion to withdraw his guilty plea. The district court denied Rasco's motion to postpone his sentencing and explained that it had previously found that Rasco had entered his guilty plea freely and voluntarily. Rasco then stated that it was in his "best interest" to have Wade, his retained counsel, represent him at sentencing. The court allowed Wade to appear on Rasco's behalf.

Rasco acknowledged that he had received an opportunity to "read and discuss" the PSI. Although Wade had already filed objections to the PSI on Rasco's behalf, Wade now requested a 24-hour continuance to file a sentencing memorandum, but the district court denied her request too.

Wade again objected to the PSI's (1) two-level increase for sophisticated means to the extent that increase was based on a finding that Rasco had relocated a fraudulent scheme from Florida to Georgia and (2) four-level increase for Rasco's aggravating role because his offense did not involve five participants.

The district court overruled Wade's objections to the PSI's calculations and adopted the PSI's advisory guidelines range of 97 to 120 months' imprisonment on Count 1, plus 24 months on Count 2 "to be served consecutively."

16

Wade argued that sentencing Rasco to a guidelines sentence would create sentence disparities between Rasco and Mederos (48 months' imprisonment) and Oswald (13 months' imprisonment).  Wade requested that the court correct any sentencing disparity when considering the 18 U.S.C. § 3553(a) factors.

The government argued that Rasco should be sentenced to the high end of his advisory guidelines range.  Rasco had an extensive criminal history, which included convictions for drug-trafficking and assaulting a customs officer.  The government asserted that Rasco and Mederos were not similarly situated because Mederos received a three-level reduction in her offense level for acceptance of responsibility and did not have Rasco's criminal record.

The district court stated that it had listened to all of the arguments, reviewed the PSI, and considered the § 3553(a) factors.  The court further stated that it had found "no reason to depart from the sentence called for by application of the advisory guidelines inasmuch as the facts as found are the kind contemplated by the Sentencing Commission."  The court sentenced Rasco to 109 months' imprisonment on Count 1 and to a consecutive term of 24 months' imprisonment on Count 56, for a total sentence of 133 months' imprisonment.  The court ordered $3,948,846.47 in restitution.

After the district court imposed the sentence, Wade indicated that she had no objections to the sentence imposed other than those previously stated for the

17

record.  The district court dismissed the third superseding indictment's 57 other counts against Rasco.  Rasco now appeals his convictions and sentences.[5]

## II.  VOLUNTARINESS OF RASCO'S GUILTY PLEA

On appeal, Rasco argues that his guilty plea was not made knowingly or voluntarily because, during the plea colloquy, the district court violated Rule 11 of the Federal Rules of Criminal Procedure.  Specifically, Rasco asserts that the district court failed to inform him that: (1) it could impose restitution; and (2) Count 56 had a mandatory minimum sentence of two years' imprisonment.

As outlined above, a year after entering his guilty plea, Rasco alerted the district court of his desire to withdraw his plea based on counsel allegedly coercing him to plead guilty to the aggravated-identity-theft charge in Count 56.[6]  However, throughout all proceedings in the district court, Rasco never complained nor mentioned in any way to the district court that it had failed to inform him during the plea colloquy that it could impose restitution and that Count 56 had a mandatory two-year prison sentence.

## A.    Plain Error Review

---

[5]In this Court, Rasco filed a motion for appointment of counsel, and we appointed Rasco appellate counsel.

[6]Although in the district court Rasco alleged that his retained counsel coerced him into pleading guilty to aggravated identity theft, he does not raise this issue on appeal, and we therefore do not address it.

18

Because Rasco failed to object to the Rule 11 colloquy while in the district court, we review only for plain error whether his guilty plea was valid under Rule 11. See United States v. Mosley, 173 F.3d 1318, 1322, 1328 n.13 (11th Cir. 1999) (applying plain error to a defendant's argument that his guilty plea was invalid under Rule 11(c)(1), and noting that, although the defendant filed a pro se motion to withdraw his guilty plea, that motion was based on his attorney's alleged ineffectiveness, and the defendant never objected to the Rule 11 colloquy in the district court); United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007) ("To preserve an issue for appeal, 'one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.'").

To establish plain error, a defendant must show that there is (1) error, (2) that is plain, (3) that affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). "Furthermore, a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Evans, 478 F.3d 1332, 1338 (11th Cir. 2007) (internal quotation marks omitted).

19

In reviewing whether an alleged Rule 11 error affected a defendant's substantial rights, we "may consider the whole record," not just the plea colloquy. United States v. Monroe, 353 F.3d 1346, 1350 n.3 (11th Cir. 2003).

"A guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process." Moriarty, 429 F.3d at 1019. Failing to advise a defendant as to the matters required by Rule 11 goes to the knowing and voluntary nature of a guilty plea. Id. The district court commits error that is plain when it fails to advise a defendant of all of the information contained in Rule 11(b)(1), including advising as to any applicable mandatory minimum penalty or the district court's "authority to order restitution." Id. at 1019-20; Fed. R. Crim. P. 11(b)(1)(I), (b)(1)(K).

However, the record as a whole may show that the defendant's substantial rights are not affected when the PSI sets forth the correct penalties, the defendant acknowledges reviewing and discussing the PSI, and then the defendant does not object on that basis. See United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009) (concluding that, although the district court and plea agreement misadvised defendant Brown about the maximum term of supervised release, "Brown's own conduct indicate[d] that his substantial rights were not harmed" because the PSI stated the correct term and Brown did not object to the PSI or his sentence on this

20

basis); see United States v. Bonilla, 579 F.3d 1233, 1237, 1239 (11th Cir. 2009) (rejecting the defendant's argument—that his plea was entered unknowingly under Rule 11 due to the district court's failure to advise him of his mandatory minimum sentence for his aggravated-identity-theft offenses—because the PSI set forth the penalties for the offense, the court went over the PSI at the sentencing hearing, and the defendant did not object to the statutory mandatory minimum at that time); United States v. Bejarano, 249 F.3d 1304, 1306-07 (11th Cir. 2001) (providing that the defendant had not shown that his substantial rights were affected by the district court's failure to inform him at the plea colloquy that his sentence would include a mandatory minimum term of five years' supervised release where the PSI correctly stated the mandatory minimum term of supervised release, and the defendant did not object to the PSI at sentencing).

## B.    Rasco's Plea Colloquy

At the plea hearing, the district court correctly informed Rasco that the two-year prison term for Count 56's aggravated-identity-theft charge was to run consecutively and was the maximum sentence on that count.  What the district court failed to do was advise Rasco that the two-year term was also the mandatory minimum sentence.  The district court also did not advise Rasco of its authority to order restitution.  Thus, the district court committed error that was plain in failing to correctly advise Rasco as to these matters.  See Moriarty, 429 F.3d at 1019.

21

We conclude, however, that the record as a whole shows Rasco fully knew about both matters, and Rasco's conduct "indicates that his substantial rights were not harmed by the district court's error[s] during the plea hearing." Brown, 586 F.3d at 1346 (internal quotation marks omitted); see Bejarano, 249 F.3d at 1306-07.

As to restitution, Rasco's plea agreement informed him that an order of restitution was possible, the loss amount was between $2.5 and $7 million, and any restitution order would encompass full restitution. Rasco signed the plea agreement and stated that he had discussed his case with his attorney. The PSI also correctly stated that restitution should be ordered in the amount of $3,948,846.47.

As to the two-year prison term, Rasco's PSI correctly stated that Count 56 had a "statutorily required term of imprisonment" of two years, which "shall be served consecutively to any other term of imprisonment imposed."

Rasco and his counsel also did not object to the statements in the PSI setting forth Count 56's mandatory sentence and restitution. Rasco stated that he had "read and discussed" the PSI. After the district court imposed Rasco's sentence, Rasco and his counsel again failed to object to the mandatory minimum penalty on Count 56 or to the restitution amount.

While our precedent above relied mainly on correct statements in a PSI, there is more to rely on here. At the Faretta hearing, the magistrate judge also

22

correctly advised Rasco that the probation officer recommended a consecutive mandatory sentence of 2 years' imprisonment as to Count 56 and restitution in the amount of $3,948,846.47. After hearing this information, Rasco never stated that he did not know of Count 56's mandatory minimum penalty or of the district court's authority to impose restitution or that he wished to withdraw his plea on these bases.

Taken together, the text of the plea agreement, the information in the PSI, and the magistrate judge's statements at the Faretta hearing informed Rasco that Count 56 had a two-year mandatory penalty that ran consecutive to Count 1 and that restitution could be imposed. In addition, Rasco never moved to withdraw his guilty plea on the basis that he was unaware of Count 56's mandatory minimum penalty or of the district court's authority to order restitution.

Rasco also fails to show that he would not have pled guilty "but for the error[s]" that occurred here. See Evans, 478 F.3d at 1338. Rasco has pointed to no evidence that he would not have pled guilty if the district court had advised about the mandatory two-year prison term on Count 56 and about its authority to impose restitution.

For all these reasons cumulatively, we conclude that Rasco has not shown that the district court's errors affected his substantial rights or, alternatively, that he has not shown that the errors seriously affected the proceedings.

### III.  REQUEST FOR NEW COURT-APPOINTED COUNSEL

Next, Rasco asserts that the magistrate judge erred in denying Rasco's request for new, court-appointed counsel, which was made during his Faretta hearing on September 28, 2011.  Rasco's request for court-appointed counsel at the Faretta hearing before the magistrate judge was his first request for appointed counsel.[7]  Because Rasco failed to appeal to the district court the magistrate judge's denial of Rasco's September 2011 request for court-appointed counsel, we lack jurisdiction to review this ruling.[8]  See United States v. Brown, 299 F.3d 1252, 1259-60 (11th Cir. 2002) (stating that our Court lacks jurisdiction to review a magistrate judge's order where the defendant fails to "ever raise[] the issue before the district court for review of the magistrate judge's order"), judgment vacated and remanded, 538 U.S. 1010, 123 S. Ct. 1928 (2003), opinion reinstated on remand, 342 F.3d 1245, 1246 (11th Cir. 2003); United States v. Renfro, 620

---

[7]While Rasco also cites his August 12, 2010 CJA financial affidavit, he did not file an actual request for an attorney independent from the financial affidavit.  After filing this affidavit, Rasco never requested a new attorney at his August 30, 2010 trial or at his plea hearing.  Rather, Rasco expressly advised the district court at his 2010 plea hearing that he was satisfied with attorney Wade's representation.  The only time Rasco requested that the district court provide him a court-appointed attorney was right before his September 2011 sentencing.

[8]We are required to examine our jurisdiction sua sponte and review jurisdictional issues de novo.  United States v. Lopez, 562 F.3d 1309, 1311 (11th Cir. 2009).

F.2d 497, 500 (5th Cir. 1980) (concluding that "[t]he law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates").[9]

Here, Rasco had an opportunity to object to the magistrate judge's order, but never did. For example, at the beginning of the September 28, 2011 sentencing hearing, Rasco could have alerted the district court that he objected to the magistrate judge's order, but he did not. In addition, Rasco knew how to move for a continuance, as he sought a continuance of the sentencing hearing to file a motion to withdraw his guilty plea. But he did not seek such a continuance to file objections to the magistrate judge's ruling as to court-appointed counsel.

Simply put, Rasco needed to alert the district court that he disagreed with the magistrate judge's ruling as to this court-appointed counsel issue prior to sentencing so that the district court could "effectively review" the magistrate judge's order. See Renfro, 620 F.2d at 500 (explaining that an appellate court lacks jurisdiction to review a magistrate judge's ruling where the district court is "deprived" of its "ability to effectively review the magistrate's holding"). Because Rasco failed to do so, we lack jurisdiction to review the magistrate judge's denial of Rasco's request for court-appointed counsel.

## III.  SENTENCE

---

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## A.    Sophisticated-Means Increase

As to his base offense level, Rasco argues that the district court clearly erred in applying a two-level increase for sophisticated means under § 2B1.1(b)(9).

We review for clear error a district court's finding that sophisticated means were used.  United States v. Barrington, 648 F.3d 1178, 1199 (11th Cir. 2011). "When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence."  United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013).  However, where a defendant fails to object to factual allegations contained in the PSI, he admits those facts for sentencing purposes.  United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Under the version of the Guidelines in effect when the district court sentenced Rasco, § 2B1.1(b)(9) provided for a two-level increase to a base offense level if, inter alia, (1) "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials," or (2) "the offense otherwise involved sophisticated means."  U.S.S.G. § 2B1.1(b)(9)(A), (C) (2010) (emphasis added).  The commentary to § 2B1.1(b)(9)(C) defined "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of

26

an offense." Id. at cmt. n.8(B). "Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." Id. The sophisticated-means increase is proper where the "totality of the scheme was sophisticated." United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010).

Rasco argues that no evidence supported the district court's finding that he moved his scheme from Florida to Georgia to evade law enforcement. We need not address that issue because Rasco's scheme "otherwise involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C) (2010). The unobjected-to facts in the PSI and Rasco's factual proffer amply established such sophisticated means. Indeed, Rasco's scheme (1) used the identity and Medicare provider number of at least one physician, without his consent, to generate false bills for services that were never provided, and (2) involved recruiting HIV/AIDS patients who were Medicare beneficiaries to visit United Therapy and, later, United Medical, providing those patients with unnecessary medical procedures, and then billing Medicare for those services.

In addition, after receiving payment from Medicare for the false and fraudulent claims, Rasco attempted to hide the assets of United Therapy by transferring them to a bank account under the name United Medical. After United Therapy was under investigation, Rasco attempted to continue his Medicare fraud

27

scheme by founding United Medical by way of filing false corporate documents that falsely listed Niurka, rather than Rasco, as United Medical's owner. Based on the record facts, the totality of the scheme was patently complex, and the district court was entitled to find that Rasco used sophisticated means to execute and conceal the offense. See id.

**B.    Aggravating-Role Increase**

Rasco argues that the district court clearly erred in applying a four-level increase for his aggravating role in the offense under § 3B1.1(a). Specifically, he argues that the criminal activity did not involve five or more participants and that he did not have control over the participants. As in the district court, Rasco does not contest that he exercised control over the criminal activity itself.

A district court's determination of a defendant's role in an offense is a finding of fact that we review for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

Under U.S.S.G. § 3B1.1(a), a defendant's offense level is increased by four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1(a). For the four-level increase to apply, the government must show that: (1) the defendant's role rose to the level of being an organizer or leader; and (2) the conspiracy involved five or more people or was otherwise extensive. United States

28

v. Martinez, 584 F.3d 1022, 1026 (11th Cir. 2009).  Furthermore, the defendant must have been the "organizer, leader, manager, or supervisor of one or more other participants."  U.S.S.G. § 3B1.1, cmt. n.2; United States v. Harness, 180 F.3d 1232, 1235 (11th Cir. 1999) (providing that, for an aggravating-role adjustment to apply under § 3B1.1, the evidence must show that the defendant had control over another participant in the criminal activity, not the just control over the criminal activity itself).

For purposes of counting the number of participants in the conspiracy, a "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1, cmt. n.1.  The defendant is counted as one of the five participants.  United States v. Holland, 22 F.3d 1040, 1045 (11th Cir. 1994).

Here, the undisputed facts in the PSI demonstrated that Rasco's conspiracy involved at least five participants who knowingly engaged in illegal activities, such that they could be held criminally responsible.  In fact, Rasco, Niurka, Mederos, and Oswald all pled guilty to at least some aspect of the fraud, thus evidencing their participation in the scheme.  See U.S.S.G. § 3B1.1, cmt. n.1.  In addition, there was nurse practitioner Perry, who created the superbills to be submitted to Medicare and knew that the bills reported false information regarding the amount of medication she had provided to each patient.  See id.  It is clear that Rasco

29

managed at least Perry because he spoke with her three to five times per day and instructed her to falsely report on the superbills the medical care she provided to patients. See id. at cmt. n.2, Harness, 180 F.3d at 1235. Given that there were at least five participants and that Rasco managed at least one participant, the district court did not clearly err in applying a four-level increase for Rasco's aggravating role in the offense.

## C.    Procedural and Substantive Reasonableness

Rasco argues that his total sentence of 133 months' imprisonment is both procedurally and substantively unreasonable.

We review the reasonableness of a sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We first determine whether the district court committed any significant procedural error[10] and then examine whether the sentence is substantively unreasonable under the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). The abuse of discretion standard "'allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.'" United States v. Irey, 612 F.3d 1160, 1189 (11th Cir.

---

[10]A district court can commit procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008) (internal quotation marks omitted).

2010) (en banc) (internal quotation marks omitted).  We ordinarily expect a sentence within the advisory guidelines range to be reasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  The party challenging the sentence bears the burden of proving the sentence is unreasonable in light of the record and the § 3553(a) factors.  Id.[11]

As to procedural error, Rasco argues that the district court failed to adequately explain the chosen sentence.[12]  "Generally, when sentencing within the advisory Guidelines range, the district court is not required to give a lengthy explanation for its sentence if the case is typical of those contemplated by the Sentencing Commission."  United States v. Livesay, 525 F.3d 1081, 1090 (11th Cir. 2008).  In explaining its reasons for imposing a sentence, "the sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."  United States v. McGarity, 669 F.3d 1218, 1263 (11th

---

[11]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

[12]Because the district court did not clearly err in applying the offense-level increases for sophisticated means and Rasco's aggravating role, we do not address Rasco's argument that his sentence is procedurally unreasonable based on the application of these increases.

31

Cir.) (internal quotation marks and brackets omitted), cert. denied, 133 S. Ct. 374 (2012). "The district court's acknowledgment that it considered the defendants' arguments at sentencing and that it considered the factors set forth in § 3553(a) alone is [a] sufficient explanation for a particular sentence." Id.

Here, the district court's statement that it considered the PSI, the parties' arguments, and the § 3553(a) factors was a sufficient explanation for the court's imposition of a total sentence of 133 months' imprisonment, which was within the advisory guidelines range. See id. Rasco has shown no procedural error in this regard.

As to substantive unreasonableness, Rasco argues that his sentence is disparate as compared with the sentences of Mederos and Oswald. In considering the § 3553(a) factors, the district court should avoid unwarranted sentence disparities among defendants with "similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For a substantive-unreasonableness claim based on a sentencing disparity, we require that the defendant raising the claim be similarly situated to those who received lesser sentences. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir.2009) (internal quotation marks omitted). To be similarly situated, codefendants must have similar backgrounds and criminal histories. See United States v. Jayyousi, 657 F.3d 1085, 1117-18 (11th Cir. 2011).

Here, Rasco has not shown that he is similarly situated to Mederos and Oswald for sentencing purposes.  See Docampo, 573 F.3d at 1101.  Mederos and Oswald did not plead guilty to both conspiracy to commit health care fraud and aggravated identity theft.  Neither Mederos nor Oswald had a criminal record similar to Rasco's criminal record, which included drug-trafficking offenses and an assault on a U.S. official.  See Jayyousi, 657 F.3d at 1117-18.  Because Rasco has not shown that he is similarly situated to either Mederos or Oswald, he has not shown that his sentence is substantively unreasonable in this respect.

Rasco also argues that the district court violated the "parsimony provision" of § 3553(a), which directs courts to impose a sentence that is "sufficient, but not greater than necessary to accomplish the goals of sentencing."  United States v. Hill, 643 F.3d 807, 884 (11th Cir. 2011) (internal quotation marks omitted).  In reviewing the sentencing transcript, we find no evidence that the district court failed to comply with its statutory obligation to consider the § 3553(a) factors and then impose a sentence that was "not too short and not too long," see Irey, 612 F.3d at 1196-97 (criticizing the use of the term "parsimony principle" because the term "slant[s] the discussion toward shorter sentences" by ignoring that sentences must also avoid being "too short"), and was within the "range of reasonable sentences," see Talley, 431 F.3d at 788.

We also conclude that Rasco has not shown that the district court committed a clear error of judgment in imposing a total sentence of 133 months' imprisonment.  See Irey, 612 F.3d at 1189.  His 109-month sentence on Count 1 was within the advisory guidelines range of 97 to 120 months, and we ordinarily expect a guidelines sentence to be reasonable.  See Talley, 431 F.3d at 788.  And, the consecutive two-year prison sentence on Count 56 was required by statute.  18 U.S.C. § 1028A(a), (b).

The district court was entitled to conclude that a downward variance from the advisory guidelines range was not warranted, in light of Rasco's serious criminal history and the seriousness of his offenses.  Under the totality of the circumstances, we cannot say that Rasco's total sentence of 133 months' imprisonment was an abuse of discretion.

For all the foregoing reasons, we affirm Rasco's convictions and sentences.

**AFFIRMED.**